# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | |
|---|---|
| ROBERT GILCREASE, JR., Individually and For Others Similarly Situated, <br><br> v. <br><br> CHEVRON USA, INC., | Case No. 7:20-cv-00183 <br><br> Jury Trial Demanded <br><br> Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Robert Gilcrease, Jr. (Gilcrease) brings this lawsuit to recover unpaid overtime wages and other damages from Chevron USA, Inc. (Chevron) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. Gilcrease worked for Chevron as a Logistics Coordinator (also referred to as a fleet coordinator and equipment coordinator) from approximately September 2017 until April 2019.

3. Gilcrease and the other similarly situated coordinators who worked for Chevron in the last three years regularly worked more than 40 hours a week.

4. But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5. Instead of receiving overtime as required by the FLSA, Chevron classified Gilcrease and other similarly situated coordinators as independent contractors and these workers were compensated with a flat amount for each day worked (a day-rate) without overtime compensation.

6. Neither Gilcrease, nor any other similarly situated coordinators who worked for Chevron and received a day-rate, received a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b).

10. Chevron conducts substantial business operations in this District and Division.

11. Gilcrease worked for Chevron in this District and Division.

## PARTIES

12. Gilcrease worked for Chevron as a Logistics Coordinator from approximately September 2017 until April 2019.

13. Throughout his employment with Chevron, Gilcrease was classified as an independent contractor and paid a day-rate with no overtime compensation.

14. Gilcrease's relationship with Chevron was an employer/employee relationship.

15. Gilcrease's written consent is attached as Exhibit A.

16. Gilcrease brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Chevron's day-rate system.

17. Although these workers regularly worked more than 40 hours each week, Chevron paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All coordinators, employed by, or working on behalf of, Chevron USA, Inc. who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

19. The Putative Class Members are easily ascertainable from Chevron's business and personnel records.

20. Defendant Chevron is a California corporation that may be served with process by serving its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

### COVERAGE UNDER THE FLSA

21. At all relevant times, Chevron has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Chevron has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Chevron has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Chevron has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, laptops, and oilfield equipment - that have been moved in or produced for commerce.

24. In each of the last three years, Chevron has had annual gross volume of sales made or business done of at least $1,000,000.

25. At all relevant times, Gilcrease and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26. Chevron treated Gilcrease and the Putative Class Members as employees and uniformly dictated the pay practices applied to Gilcrease and the Putative Class Members.

27. Chevron's misclassification of Gilcrease and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28. Chevron's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29. Chevron is a global energy company.

30. To provide its services, Chevron hires coordinators (like Gilcrease) to perform work.

31. Many of these coordinators worked for Chevron on a day-rate basis and make up the proposed Putative Class.

32. These coordinators perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

33. Chevron classified many of these workers (including Gilcrease and the Putative Class Members) as independent contractors.

34. But Chevron did not hire these workers on a project-by-project basis.

35. Rather, Chevron hired and treated these workers just like regular, even if sometimes short-term, employees.

36. During the relevant period, these coordinators regularly worked for Chevron in excess of 40 hours a week for weeks at a time.

37. During the relevant period, these coordinators worked for Chevron on a day-rate basis.

38. During the relevant period, these coordinators were not paid overtime for the hours they worked for Chevron in excess of 40 hours each week.

39. These coordinators make up the proposed Putative Class.

40. While exact job titles and job duties may differ, Chevron subjected these coordinators to the same or similar illegal pay practices for similar work.

41. For example, Gilcrease worked for Chevron as a Logistics Coordinator in Midland, Texas.

42. This work included dispatching crews, ordering supplies for the rig, ordering fuel, order pipes, and coordinating between crews and Chevron management.

43. Calen Carroll, a Chevron management-level employee hired Gilcrease for the position directly.

44. Chevron directed Gilcrease to use DMS Solutions as his staffing company.

45. Gilcrease reported directly to Chevron management-level employees, including Caleb Carroll.

46. Throughout his employment with Chevron, Gilcrease regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Gilcrease received a day-rate for each day worked, regardless of how many hours he worked in a day or week.

47. During his time with Chevron, Gilcrease regularly worked more than 12 hours each day, often for weeks at a time.

48. Gilcrease did not exercise discretion and judgment as to matters of significance.

49. To the contrary, Gilcrease's work was governed entirely by Chevron.

50. The Putative Class Members performed the same general job duties performed by Gilcrease. That is work to assist in the furtherance of oil production.

51. The Putative Class Members worked the same or similar schedule worked by Gilcrease, regularly working more than 40 hours each week. Gilcrease's work schedule is typical of the Putative Class Members.

52. During the relevant period, Chevron classified Gilcrease and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

53. Gilcrease and the Putative Class Members never received a salary.

54. If Gilcrease and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

55. Gilcrease and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

56. Without the job performed by Gilcrease and the Putative Class Members, Chevron would not have been able to complete its business objectives.

57. Gilcrease and the Putative Class Members were economically dependent on Chevron and relied on Chevron for work and compensation.

58. Chevron determined the amount and type of compensation paid to Gilcrease and the Putative Class Members.

59. Chevron set Gilcrease's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Chevron.

60. Gilcrease and the Putative Class Members worked in accordance with the schedule set by Chevron.

61. Chevron prohibited Gilcrease and the Putative Class Members from subcontracting out the work they are assigned by Chevron.

62. Gilcrease and the Putative Class Members had to follow Chevron's policies and procedures.

63. Gilcrease and the Putative Class Members had to adhere to the quality standards put in place by Chevron.

64. Gilcrease and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Chevron provided Gilcrease and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

65. Gilcrease and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the survey equipment, office space, computers, and other necessary equipment.

66. Chevron made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Gilcrease and the Putative Class Members work.

67. Gilcrease and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

68. Gilcrease and the Putative Class Members did not market their services while employed by Chevron.

69. While employed by Chevron, Gilcrease and the Putative Class Members worked exclusively for Chevron.

70. Chevron set Gilcrease's and the Putative Class Members' work schedule.

71. At all relevant times, Chevron maintained control, oversight, and direction of Gilcrease and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

72. Chevron controlled Gilcrease's and the Putative Class Members' pay.

73. Likewise, Chevron controlled Gilcrease's and the Putative Class Members' work.

74. Gilcrease's and the Putative Class Members' work had to adhere to the quality standards put in place by Chevron.

75. Gilcrease and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other coordinators in their respective positions) to perform their job duties.

76. Chevron knew Gilcrease and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

77. Chevron's records reflect the fact that Gilcrease and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

78. Gilcrease and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Gilcrease and the Putative Class Members were paid on a day-rate basis.

79. Chevron set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Chevron's policies and procedures.

80. The work Gilcrease and the Putative Class Members performed was an essential part of Chevron's core businesses.

81. Chevron controlled Gilcrease's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

82. Chevron exercised control over the hours and locations Gilcrease and the Putative Class Members worked, the tools and equipment they used, the rigs they worked on, and the rates of pay they received.

83. Even though Gilcrease and the Putative Class Members may have worked away from Chevron's offices without the constant presence of Chevron's supervisors, Chevron still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

84. Very little skill, training, or initiative was required of Gilcrease and the Putative Class Members to perform their job duties.

85. Indeed, the daily and weekly activities of Gilcrease and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Chevron.

86. Virtually every job function was predetermined by Chevron, including the tools and equipment used, the schedule of work, and related work duties.

87. Chevron prohibited Gilcrease and the Putative Class Members from varying their job duties outside of predetermined parameters and required Gilcrease and the Putative Class Members to follow its policies, procedures, and directives.

88. Gilcrease and the Putative Class Members performed routine job duties largely dictated by Chevron.

89. All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

90. All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

91. All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

92. Chevron uniformly denied Gilcrease and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

93. Gilcrease and the Putative Class Members were not employed on a salary basis.

94. Gilcrease and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day rate they were assigned for all hours worked in a single day or week).

95. Chevron's day-rate policy violated the FLSA because it deprived Gilcrease and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

96. Chevron knew Gilcrease and the Putative Class Members worked more than 40 hours in a week.

97. Chevron knew, or showed reckless disregard for whether, Gilcrease and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

98. Chevron knew, or showed reckless disregard for whether, Gilcrease and the Putative Class Members were not exempt from the FLSA's overtime provisions.

99. Nonetheless, Gilcrease and the Putative Class Members were not paid overtime.

### COLLECTIVE ACTION ALLEGATIONS

100. Gilcrease brings this claim as a collective action under the FLSA.

101. The Putative Class Members were victimized by Chevron's pattern, practice, and/or policy which was in willful violation of the FLSA.

102. Other Putative Class Members worked with Gilcrease and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

103. Based on his experiences with Chevron, Gilcrease is aware that Chevron's illegal practices were imposed on the Putative Class Members.

104. The Putative Class Members are similarly situated in all relevant respects.

105. The Putative Class Members are blue-collar workers.

106. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

107. The illegal day-rate policy that Chevron imposed on Gilcrease was likewise imposed on all Putative Class Members.

108. Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

109. The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

110. The overtime owed to Gilcrease and the Putative Class Members will be calculated using the same records and using the same formula.

111. Gilcrease's experiences are therefore typical of the experiences of the Putative Class Members.

112. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

113. Gilcrease has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

114. Like each Putative Class Member, Gilcrease has an interest in obtaining the unpaid overtime wages owed under federal law.

115. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

116. Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Chevron will reap the unjust benefits of violating the FLSA.

117. Further, even if some of the Putative Class Members could afford individual litigation against Chevron, it would be unduly burdensome to the judicial system.

118. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

119. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

120. Among the common questions of law and fact are:

   a. Whether Chevron employed the Putative Class Members within the meaning of the FLSA;

   b. Whether Chevron's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

    c.   Whether Chevron's decision to classify these workers as independent contractors was made in good faith;

    d.   Whether Chevron's violation of the FLSA was willful; and

    e.   Whether Chevron's illegal pay practice applied to the Putative Class Members.

121. Gilcrease and the Putative Class Members sustained damages arising out of Chevron's illegal and uniform employment policy.

122. Gilcrease knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

123. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Chevron's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

124. Chevron is liable under the FLSA for failing to pay overtime to Gilcrease and the Putative Class Members.

125. Consistent with Chevron's illegal day-rate policy, Gilcrease and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

126. As part of its regular business practices, Chevron intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Gilcrease and the Putative Class Members.

127. Chevron's illegal day-rate policy deprived Gilcrease and the Putative Class Members of the premium overtime wages they were owed under federal law.

128. Chevron was aware, or should have been aware, that the FLSA required it to pay Gilcrease and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

129. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

130. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

131. Those similarly situated employees are known to Chevron, are readily identifiable, and can be located through Chevron's records.

### CAUSE OF ACTION
### VIOLATION OF THE FLSA

132. Gilcrease realleges and incorporates by reference all allegations in preceding paragraphs.

133. Gilcrease brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

134. Chevron violated, and is violating, the FLSA by failing to pay Gilcrease and the Putative Class Members overtime.

135. Chevron misclassified Gilcrease and Putative Class Members for purposes of the FLSA overtime requirements.

136. Gilcrease and the Putative Class Members were Chevron's employees for purposes of the FLSA overtime requirements.

137. Chevron was Gilcrease's and the Putative Class Members' employer under the FLSA. Chevron suffered or permitted Gilcrease and the Putative Class Members to work for or on its behalf during the relevant period.

138. Chevron cannot meet its burden to demonstrate Gilcrease and Putative Class Members are exempt from overtime under the administrative exemption.

139. Chevron cannot meet its burden to demonstrate the Gilcrease and Putative Class Members are exempt from overtime under the executive exemption.

140. Chevron cannot meet its burden to demonstrate Gilcrease and Putative Class Members are exempt from overtime under the professional exemption.

141. Chevron cannot meet its burden to demonstrate Gilcrease and Putative Class Members are exempt from overtime under the highly compensated exemption.

142. Chevron misclassified Gilcrease and the Putative Class Members as independent contractors.

143. Chevron failed to guarantee Gilcrease and the Putative Class Members a salary.

144. Chevron failed to pay Gilcrease and the Putative Class Members overtime.

145. Chevron paid Gilcrease and the Putative Class Members a day rate.

146. Chevron knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Gilcrease and the Putative Class Members overtime compensation.

147. Chevron's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

148. Accordingly, Gilcrease and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

149. Gilcrease demands a trial by jury.

## PRAYER

WHEREFORE, Gilcrease, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

   a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.  A judgment against Chevron awarding Gilcrease and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d.  An order awarding attorneys' fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**